STATE OF OREGON,
*Respondent,*

*v.*

CHARLES FREDRICK TRADEWELL,
*Appellant.*

(89-02-32425; CA A62314)

816 P2d 712

Jesse Wm. Barton, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Sally L. Avera, Public Defender, Salem.

Harrison Latto, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Warren, Presiding Judge, and Riggs and Edmonds, Judges.

EDMONDS, J.

## EDMONDS, J.

Defendant appeals an order revoking his probation. He assigns as error the trial court's reliance on the result of a urinalysis as the basis for the revocation. We affirm.

Defendant was convicted of unlawful possession of a controlled substance. ORS 475.992(4). The court placed him on two years probation on the condition that he refrain from using illegal drugs. While defendant was on probation, his probation officer requested that he submit to a urinalysis. Defendant gave a urine specimen, which was analyzed by the Oregon State Hospital drug detection laboratory (OSH). The sample tested positive for methamphetamine. The state moved to revoke probation. At the hearing, the state offered in evidence a printout of the urinalysis report. Its witness testified that he did not know if OSH was licensed to perform substance abuse tests under ORS 438.435 or if a confirmatory test had been done. Defendant objected to the admission of the printout on the basis that the test was not conducted in accordance with ORS 438.435 and OAR 333-24-305 to OAR 333-24-350. The court overruled the objection and found defendant in violation of his probation.

Defendant argues that ORS 438.435(5) renders his test results inadmissible, because the state failed to prove that the urinalysis was conducted in accordance with the statute and the rules. He asserts that probation is a ''benefit'' within the meaning of ORS 438.435(5) and OAR 333-24-310(1). The state argues that the statute was not intended to control the admissibility of evidence in a probation revocation proceeding. ORS 438.435(5) provides:

> ''If an initial test shows a result indicating the presence of a substance of abuse in the body, any confirmatory test the results of which are to be used to deprive or deny any person any employment or any benefit must be conducted in a licensed clinical laboratory.''[1]

---

[1] OSH is subject to ORS 438.435. Other relevant provisions of ORS 438.435 read:

''(1) In addition to duties which a clinical laboratory may perform under this chapter, a laboratory is authorized to perform appropriate tests, examinations or analyses on materials derived from the human body for the purpose of detecting substances of abuse in the body. All laboratories performing the tests, examinations or analyses must be licensed under the provisions of this chapter

OAR 333-24-310(1) defines "benefit" as:

> "Entitlement to access to, or participation in, a drug rehabilitation or mental health program, as a condition for parole, probation, eligibility for insurance or any employment advantage."

We look first to the plain language of the statute to discern legislative intent. *Satterfield v. Satterfield,* 292 Or 780, 643 P2d 336 (1982). The status of being on probation does not appear to fall within the definition of "benefit," because probation is not a matter of right or entitlement; rather, it is the product of the exercise of judicial discretion. *See State v. Kissell,* 83 Or App 630, 732 P2d 940, *rev dismissed* 303 Or 369 (1987). Assuming, but not deciding, that the word is ambiguous, the legislative history does not support defendant's argument.

ORS 438.435 was enacted in 1987 at the behest of the Association for Oregon Medical Technology as SB 476. Or Laws 1987, ch 669, § 2. Before its enactment, the Health Department had no authority to regulate laboratories that perform only substance abuse testing. ORS 438.435 establishes licensing requirements for those laboratories. By enacting ORS 438.435, the legislature gave the Health Division the authority to regulate them, thereby ensuring the quality of the testing and protecting the public from inaccurate test results.

During the May 29, 1987, work session for SB 476, the president of the Federation of Oregon Parole and Probation Officers suggested that the phrase "or result in the deprivation of liberty" be added to subsection (5), House

---

and must employ qualified technical personnel to perform the tests, examinations and analyses.

"* * * * *

"(3) When the specimen of a person tested for substances of abuse is submitted to the laboratory and the test result is positive, the laboratory shall perform a confirming test which has been designated by rule of the Health Division as the best available technology for use to determine whether or not the substance of abuse identified by the first test is present in the specimen prior to reporting the test results."

ORS 438.050(2) provides:

"Laboratories operated by the State of Oregon * * * are exempt from licensing fees, but all other provisions of this chapter shall apply."

Committee on Labor, Tape 150A 387-410 (May 29, 1987), so that it would read:

> "If an initial test shows a result indicating the presence of a substance of abuse in the body, any confirmatory test that the results of which are to be used to deprive or deny any person any employment or any benefit *or result in the deprivation of liberty* must be conducted in a licensed clinical laboratory." (Emphasis supplied.)

The Committee refused to adopt that suggestion. Representative Hayden said that the word "benefit" in subsection (5) was sufficient to "protect [probationers and parolees]." House Committee on Labor, Tape 150A at 438. That history supports the state's argument that ORS 438.435 was not intended to control the admissibility of evidence in a probation revocation proceeding, but was aimed, in part, at continued participation in a drug treatment program. The court did not err in basing its revocation order on defendant's urinalysis report.[2]

Affirmed.

---

[2] In *State v. Nettles,* 287 Or 131, 597 P2d 1243 (1979), the court held that the exclusionary rule of Article I, section 9, of the Oregon Constitution does not apply in probation revocation proceedings. That is not an issue in this case.